J-A31036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| TYSHIR MORRISON | |
| Appellant | No. 2416 EDA 2015 |

Appeal from the Judgment of Sentence July 27, 2015
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0001150-2015

BEFORE: BENDER, P.J.E., MOULTON , J., and FITZGERALD, J.[*]

MEMORANDUM BY FITZGERALD, J.: **FILED MAY 10, 2017**

Appellant, Tyshir Morrison, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his bench trial convictions of persons not to possess firearms,[1] firearms not to be carried without a license,[2] and carrying firearms in public in Philadelphia.[3] Appellant alleges the trial court erred in denying his motion to suppress the gun found in his pocket. We reverse the suppression order.

The relevant facts and procedural history of this appeal are as follows. On May 21, 2015, Appellant filed an omnibus pretrial motion to suppress the discovery of the firearm. The trial court conducted a hearing on Appellant's

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1).

[2] 18 Pa.C.S. § 6106(a)(1).

[3] 18 Pa.C.S. § 6108.

motion on May 26, 2015. Officer Joseph Hogan testified to the following on direct examination. On January 18, 2015, he and Officer Sean Parker were on patrol in Philadelphia in their police uniforms and marked patrol car. N.T., 5/26/15, at 6-7. At approximately 8:25 p.m., the officers received a radio call from an unknown source about a robbery with a firearm of a store at 1700 Susquehanna Avenue in Philadelphia. *Id.* at 7-8. The perpetrators were described as two black males wearing black hoodies, blue jeans, and masks. *Id.* Approximately five minutes later, the officers saw Appellant and another male walking along the 1700 block of West Lehigh Avenue, which is about five blocks away from where the robbery occurred. *Id.* at 8-9. Appellant was wearing a black hoodie and gray sweatpants.[4] *Id.* at 9. There were no other individuals or parked vehicles on the block. *Id.* at 9-11.

Officer Hogan was slowly driving the patrol car as he and Officer Parker surveyed Appellant and the other male. *Id.* at 10-11. Officer Hogan then stopped the patrol car about five feet away from the two males. *Id.* at 11. Officer Parker got out of the patrol car and told the two males to stop. *Id.* The other male stopped walking while Appellant, who appeared nervous, turned his back towards the patrol car and started slowly walking away from the officers. *Id.* at 12.

---

[4] No description of Appellant's companion was given.

Officer Hogan exited the patrol car and also told Appellant to stop. *Id.* at 12-13. Appellant complied and Officer Hogan approached Appellant and told him to remove his hands from his pockets. *Id.* at 13. Appellant initially complied, but put his hands back in his pockets while speaking to Officer Hogan. *Id.* Officer Hogan noticed that Appellant's pocket was weighed down and saw the handle of a black handgun protruding from his pocket. *Id.* Officer Hogan seized the firearm and arrested Appellant. *Id.* at 15.

Officer Hogan further testified on cross-examination:

[Defense Counsel]. Okay. Now Officer, you said the flash you received was for two black men in black hoodies, mask, and blue jeans, correct?

[Officer Hogan]. Correct.

Q. Okay. So in that flash, you didn't have any mention of the age of the men?

A. I don't recall.

Q. Nothing for height?

A. I don't recall.

Q. No weight?

A. I don't recall.

Q. And Officer, the fact that they matched this description is the only reason you stopped them, correct?

A. Correct.

Q. When you first saw them on the street, they were just walking?

A. They were.

\*　　\*　　\*

Q. . . . And you gave the information to prepare the PARS, correct?

A. I did, but I did not prepare it.

Q. Officer, you would agree with me there is no information about him turning and then walking away?

A. I didn't prepare this, but I did not see any information about his turning his back.

Q. Thank you.

Now, Officer, when you ordered [Appellant] to stop, you had not seen the butt of a gun at that point, correct?

A. I did not. Until I actually approached [Appellant].

Q. And as you were approaching him, that is when you noticed the weight of the pocket, correct?

A. I did, yes.

Q. And you didn't notice the butt of the gun until you had actually walked around and were facing [Appellant], correct?

A. When he turned around, I approached [Appellant]. I told [Appellant] to take his hands out of his pockets, and I could see the butt—well his pocket weighed down. When I looked at the pocket, it was actually the butt of the gun was sticking out of it.

Q. Officer, you are face-to-face with [Appellant] at this point, correct?

A. Yes. Approximately 2 feet away.

Q. Okay. Officer, you never saw him run, correct?

A. He did not run.

*Id.* at 17, 19-20.

At the conclusion of the hearing, the trial court denied Appellant's suppression motion and immediately proceeded to a bench trial. Thereafter, the court found Appellant guilty of the aforementioned firearms offenses. The court sentenced Appellant on July 27, 2015, to four to eight years' imprisonment for persons not to possess firearms, with no further penalty on the remaining convictions. Appellant timely filed a notice of appeal on August 6, 2015. The court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied.

Appellant raises the following issue for our review:

> Did not the trial court err in denying [A]ppellant's motion to suppress physical evidence, insofar as [A]ppellant was stopped and frisked without reasonable suspicion?

Appellant's Brief at 3.

Appellant argues his motion to suppress the firearm should have been granted because he was stopped without reasonable suspicion in violation of the Pennsylvania and United States Constitutions. Appellant alleges he was unlawfully seized by the police officers without reasonable suspicion because there was no criminal activity afoot at the time of the stop. Appellant maintains no reasonable person in Appellant's situation would have believed he was free to leave, as he was approached by two uniformed police officers in a marked patrol car and told twice to stop. Appellant claims there is no

evidence in the record that he matched the general description of the suspects, which was provided to the police by an unknown source. Appellant concludes this Court should vacate his judgment of sentence and remand for a new trial excluding the illegally seized evidence.

In its brief, the Commonwealth argues the interaction between the police and Appellant and his companion was a mere encounter. The Commonwealth alleges the trial court properly determined it was the officers' duty to stop Appellant and the other male because of their proximity in time and location to the robbery, they matched the reported race of the suspects, and Appellant's clothes partially matched the description of the suspects. The Commonwealth claims Appellant and the other male were not physically restrained in anyway, that there was no indication of coercion because the officers did not activate their lights and sirens, and Appellant and the other male were told to stop in a normal tone. The Commonwealth asserts that, viewing the totality of the circumstances, the interaction between the officers and Appellant did not rise to a restraint on Appellant's liberty that would cause a reasonable person to believe he was not free to leave. Furthermore, the Commonwealth argues that the mere encounter rose to an investigative detention that was supported by reasonable suspicion based on Officer Hogan's observations of Appellant's nervous behavior, his walking away from the officers, and the recent report of a robbery by two men in the same area. Finally, the Commonwealth contends

that the suspects' description provided in the radio call suggested that the tip was provided by an eyewitness, not an anonymous source. The Commonwealth, thus, maintains that Officer Hogan made a plain view observation of Appellant's weighed down pocket and the protruding gun handle during a lawful investigative detention. Therefore, the Commonwealth asserts that the trial court properly denied Appellant's motion to suppress.

For the reasons that follow, we reverse the trial court's denial of Appellant's suppression motion, vacate his judgment of sentence, and remand.

> Our standard of review in addressing a challenge to the denial of a suppression motion is
>
> > limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.
>
> [*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)] []. Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression

hearing when examining a ruling on a pre-trial motion to suppress.  **See In re L.J.**, [] 79 A.3d 1073, [1080] ([Pa.] 2013).

**Commonwealth v. Ranson**, 103 A.3d 73, 76 (Pa. Super. 2014), *appeal*

*denied*, 117 A.3d 296 (Pa. 2015).

> The Fourth Amendment of the Federal Constitution provides, "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV.  Likewise, Article I, Section 8 of the Pennsylvania Constitution states, "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures . . . ."  Pa. Const. Art. I, § 8.  Under Pennsylvania law, there are three levels of encounter that aid courts in conducting search and seizure analyses.
>
>> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond.  The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest.  Finally, an arrest or "custodial detention" must be supported by probable cause.

**Commonwealth v. Carter**, 105 A.3d 765, 768 (Pa. Super. 2014) (*en banc*)

(some citations omitted).

"If a reasonable person does not feel free to terminate an encounter

with the police and leave the scene, then a seizure of that person has

occurred."  **Commonwealth v. Ayala**, 791 A.2d 1202, 1208 (Pa. Super.

2002) (citation omitted).  However,

> [t]he Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. It is axiomatic that to establish reasonable suspicion, an officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. . . . [A]s the Supreme Court has long recognized, *Terry v. Ohio*, 392 U.S. 1 [] (1968) is an exception to the textual standard of probable cause. A suppression court is required to take[] into account the totality of the circumstances—the whole picture. When conducting a *Terry* analysis, it is incumbent on the suppression court to inquire, based on all of the circumstances known to the officer *ex ante*, whether an objective basis for the seizure was present. In addition, an officer may conduct a limited search, *i.e.*, a pat-down of the person stopped, if the officer possesses reasonable suspicion that the person stopped may be armed and dangerous.

*Commonwealth v. Carter*, 105 A.3d 765, 768-69 (Pa. Super. 2014) (*en banc*) (some quotation marks and citations omitted), *appeal denied*, 117 A.3d 295 (Pa. 2015).

> In determining whether reasonable suspicion exists for an investigative detention, or as it is also known in the common legal vernacular, a "*Terry* stop," the inquiry is the same under both the Fourth Amendment of the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution. "The fundamental inquiry is an objective one, namely, whether 'the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate.'" In order to determine whether the police had a reasonable suspicion to subject an individual to an investigative detention, the totality of the factual circumstances which existed at the time of the investigative detention must be considered. "Among the factors to be considered in establishing a basis for reasonable suspicion are tips, the reliability of the

informants, time, location, and suspicious activity, including flight."

***Ayala***, 791 A.2d at 1208 (citations omitted).

"[E]ven where the circumstances surrounding an individual's conduct suggest ongoing illegality, the individual may not be detained unless his or her personal conduct substantiates involvement in that activity." ***Commonwealth v. Beasley***, 761 A.2d 621, 626 (Pa. Super. 2000) (citations omitted). "This standard . . . requires a particularized and objective basis for suspecting the **particular person stopped** of criminal activity." ***Ayala***, 791 A.2d at 1209 (citation and quotation marks omitted).

> [I]n order for a stop to be reasonable under ***Terry*** [], the police officer's reasonable and articulable belief that criminal activity was afoot must be linked with his observation of suspicious or irregular behavior on the part of the particular defendant stopped. Mere presence near a high crime area . . . or in the vicinity of a recently reported crime . . . does not justify a stop under ***Terry***. Conversely, an officer's observation of irregular behavior without a concurrent belief that crime is afoot also renders a stop unreasonable.

***Id.*** (citations omitted). A police officer's assessment that an individual appears nervous "does not provide reasonable suspicion for an investigative detention." ***Commonwealth v. DeHart***, 745 A.2d 633, 637 (Pa. Super. 2000) (citing ***Commonwealth v. Sierra***, 723 A.2d 644 (Pa. 1999)). Moreover, "[o]ur Supreme Court has held that where a citizen approached by a police officer is ordered to stop . . . obviously a 'stop' occurs." ***Ranson***, 103 A.3d at 77 (holding that the appellant was subjected to an investigative

detention at the time the police officers commanded him to stop) (citation and quotation marks omitted). "[P]ursuit by police constitutes a seizure under the law of this Commonwealth[; therefore,] a person may be seized even though he is moving away from the police." *Id.* (citation omitted). Thus, the issue is whether police officers possess reasonable suspicion that the suspect was engaged in criminal conduct when they issued a command to stop. *Id.*

Furthermore, when analyzing a tip from an unknown source "we must determine whether under 'the totality of the circumstances' the informant's tip established the necessary reasonable suspicion that criminal activity was afoot." *Ranson*, 103 A.3d at 78 (citation omitted). "[Both] quantity and quality of information are considered when assessing the totality of the circumstances. If information has a low degree of reliability, then more information is required to establish reasonable suspicion." *Id.* (citation omitted).

> [A] radio dispatch based on information provided from an informant whose identity is unknown, and which accuses an individual of involvement in criminal activity, will not, standing alone, provide the requisite basis for an investigatory detention of a person who happens to match the physical description of the accused individual provided by the tipster. . . .
>
> > Because of its unreliability, an anonymous radio call alone is insufficient to establish a reasonable suspicion of criminal activity. The Court in [*Commonwealth v. Jackson*, 698 A.2d 571 (Pa. 1997)] further explained that the fact that the police proceeded to the designated location and saw a

- 11 -

person matching the description in the call did not corroborate any alleged criminal activity. Since anyone can describe a person who is standing in a particular location, something more is needed to corroborate the caller's allegations of criminal conduct. In the typical anonymous caller situation, the police will need an independent basis to establish reasonable suspicion.

. . . When the police receive unverified information that a person is engaged in illegal activity, the police may observe the suspect and conduct an investigation. If police surveillance produces a reasonable suspicion of criminal conduct, the suspect may be stopped and questioned.

*Ayala*, 791 A.2d at 1209-10 (quotation marks and some citations omitted).

Instantly, we must first examine whether the encounter between Appellant and Officers Hogan and Parker rose to an investigative detention. *See Carter*, 105 A.3d at 768. Appellant and the other male were walking down the street five blocks away from where the robbery occurred when Officers Hogan and Parker stopped their patrol vehicle behind the two men because they matched the suspects' description. N.T. at 10-11, 17. Officer Parker then alighted from the patrol vehicle in full uniform and told the two males to stop. *Id.* at 11. Appellant continued walking while his companion stopped to talk to Officer Parker. *Id.* at 12. When Officer Hogan saw Appellant walking away, he then got out of the vehicle in full uniform and again told Appellant to stop. *Id.* at 12-13. Under these circumstances, it is apparent that when the officers twice ordered Appellant to stop he was immediately subjected to an investigative detention. *See Ranson*, 103

A.3d at 77. Thus, a reasonable person in Appellant's situation would not have felt free to terminate the encounter and leave the scene. *See Ayala*, 791 A.2d at 1208. Accordingly, the Commonwealth's assertion that the interaction between the officers and Appellant began as a mere encounter similar to that in *Commonwealth v. Lyles*, 97 A.3d 298 (Pa. 2014) is unavailing. *Cf. Lyles*, 97 A.3d at 306 (holding interaction in which a uniformed police officer approached the appellant and requested his identification did not amount to more than a mere encounter).

Having concluded that Appellant was subjected to an investigative detention when the officers told him to stop, we must next examine whether Officers Hogan and Parker possessed reasonable suspicion that Appellant and the other male were engaged in criminal conduct when the officers issued the command to stop. *See Ranson*, 103 A.3d at 77. At the suppression hearing, Officer Hogan testified that Appellant and the other male were merely walking down the street when the officers pulled over their patrol vehicle. N.T. at 17. He further testified that Appellant did not run but instead began slowly walking away while the other man spoke with Officer Parker. *Id.* at 12, 20. Officer Hogan did not notice that Appellant's pocket appeared to be weighed down or that there was a handle of a gun sticking of his pocket until **after** he told Appellant to stop, approached him, and asked him to remove his hands from his pockets. *Id.* at 19. Officer Hogan further testified that the only reason why they stopped Appellant and

- 13 -

the other male was because they matched the description of the robbery suspects. *Id.* at 17. Nevertheless, the suspects' description was provided by an unknown source and the radio call only described the suspects as two black males wearing black hoodies, blue jeans and masks.[5] *Id.* at 7-8. No further physical description of the suspects was provided.[6] Appellant, a black male, was wearing a black hoodie with grey sweatpants when the officers stopped him. *Id.* at 9. Thus, under the totality of the circumstances, the quality and quantity of the information provided by the unknown source was insufficiently reliable to establish reasonable suspicion. *See Commonwealth v. Coleman*, 130 A.3d 38, 46-47 (Pa. Super. 2015) (holding an anonymous tip that the appellant was selling drugs and had been cited for driving with a suspended license was a bare bones allegation that fell short of the quality and quantity of information required to corroborate a search of the appellant's residence); *see also Ranson*, 103 A.3d at 78; *Ayala*, 791 A.2d at 1209-10; *DeHart*, 745 A.2d at 637 (determining a radio police tip from an unknown source that reported a

---

[5] Although the Commonwealth argues that the tip was provided by an eyewitness and not an anonymous source, this is pure speculation. *See* Commonwealth's Brief at 17. The Commonwealth failed to present any evidence at the suppression hearing to prove this allegation; thus, it failed to meet its burden. *See* Pa.R.Crim.P. 581(H); *see also In re L.J.*, 79 A.3d at 1080 (stating appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress).

[6] The Commonwealth presented no testimony regarding the companion's clothing.

suspicious slow moving vehicle was too vague and was unsupported by indicia of reliability to provide the police officers with reasonable suspicion of criminal activity for an investigative detention). Moreover, the fact that Appellant appeared nervous after the officers stopped and approached him does not provide reasonable suspicion for an investigative detention. *See DeHart*, 745 A.2d at 637.

Viewing the totality of the circumstances, Appellant's personal conduct when he was stopped did not support an objective basis that he was involved in any illegal activity. *See Ayala*, 791 A.2d at 1208, 1209; *Beasley*, 761 A.2d at 626. Therefore, the trial court erred in denying Appellant's motion to suppress the firearm, as the officers lacked reasonable suspicion to stop and search Appellant pursuant to an investigative detention. *See Carter*, 105 A.3d at 768-69; *Ayala*, 791 A.2d at 1208. Accordingly, we reverse the trial court's denial of Appellant's suppression motion, vacate the judgment of sentence, and remand for proceedings consistent with this memorandum.

Judgement of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>5/10/2017</u>