J-A02032-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BENJAMIN JENKINS, | |
| Appellant | No. 262 WDA 2017 |

Appeal from the Judgment of Sentence entered January 12, 2017,
in the Court of Common Pleas of Allegheny County,
Criminal Division, at No(s): CP-02-CR-0008390-2016.

BEFORE:  BOWES, OLSON, and KUNSELMAN, JJ.

MEMORANDUM BY KUNSELMAN, J.:                    FILED MARCH 02, 2018

Appellant, Benjamin Jenkins, appeals from the judgment of sentence imposed after he was convicted following a bench trial of two firearm violations, possession of a small amount of marijuana, and public drunkenness.[1] Appellant claims the police officer had no reasonable suspicion to stop him and the search was illegal.  Because the record supports the findings of the trial court, we affirm.

The trial court summarized the pertinent facts as follows:

Around 7:30 in the morning on a school day, a Sto-Rox police officer is called to the high school.  The call was that a former student showed up and he was intoxicated.  Officer Nicholas Hryadil responded to the call.  He gets to the main

_____

[1] See  18 Pa.C.S.A. §§ 6105(a)(1) and 6106(a)(1), 35 P.S. § 780-113(a)(31), and 18 Pa.C.S.A. § 5505, respectively.

office of the high school and [sees Appellant] talking with a former teacher. [Appellant] appeared drowsy and intoxicated, yet jovial. He hugged the former teacher 3 times while [Officer] Hryadil was there. School personnel did not want him there any longer. [Officer] Hryadil asked him to leave. It took some more talking. Eventually, [Appellant] "walked out the door." [Appellant] was just a few feet away from the door and [Officer] Hryadil himself when [the officer] noticed "a bulge sticking in [Appellant's] waistband and it looked like the end of a firearm." Based upon his training and 16 years of police experience, [Officer] Hryadil believed it to be a gun. He told [Appellant] to put his hands on his head and [the officer] "reached down and felt it." "[I]t felt like a firearm. "[L]ike the handle of a snub nose revolver." "It's a short handle kind of round a little bit on the top part of it that was facing downward." [Officer] Hryadil moved [Appellant's] shirt and removed the item from [Appellant's] waistband. [Appellant] was then arrested and later a small amount of marijuana was found on him.

Trial Court Opinion, 4/10/17, at 1-2.

Prior to trial, Appellant filed a motion to suppress the evidence, the trial court held a hearing on the motion, and it denied the motion at the conclusion of the hearing. On January 12, 2017, Appellant waived his right to a jury trial and, following a stipulated non-jury trial wherein the suppression testimony was incorporated, the trial court found Appellant guilty of all of the charges. Appellant waived the preparation of a presentence report and proceeded immediately to sentencing. The trial court imposed an aggregate sentence of 11 ½ to 23 months of imprisonment and a concurrent 4 year probationary term. This timely appeal follows. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issue:

> I. Did the trial court err in denying [Appellant's] motion to suppress where the police lacked reasonable suspicion to believe [Appellant] was engaged in criminal activity and was armed and dangerous at the time he was seized and simultaneously searched?

Appellant's Brief at 5.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." Commonwealth v. Simonson, 148 A.3d 792, 796 (Pa. Super. 2016) (citation omitted). When, as here, a motion to suppress is denied, we apply the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . [When] the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

Id.

"Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." Commonwealth v. Evans, 153 A.3d 323, 327 (Pa. Super. 2016) (citations omitted). Finally, when considering a motion to suppress evidence, it is within the suppression court's sole province as

factfinder to pass on the credibility of the witnesses and the weight to be given their testimony. Commonwealth v. Simonson, 148 A.3d at 796 (citation omitted).

This Court has summarized:

> There are three types of encounters between law enforcement officials and private citizens. A "mere encounter" need not be supported by any level of suspicion but carries no official compulsion to stop or respond. An "investigative detention" must be supported by reasonable suspicion and subjects the suspect to a stop and period of detention, but it does not have the coercive conditions that would constitute an arrest. The Court determines whether reasonable suspicion exists by examining the totality of the circumstances. An arrest, or "custodial detention," must be supported by probable cause.

In the Interest of J.G., 145 A.3d 1179, 1185 (Pa. Super. 2016)(citations omitted).

Here, the parties and the trial court agree that Officer Hyradil's actions toward Appellant constituted an investigatory detention. Such an encounter is permitted in Pennsylvania whenever:

> [A] law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. It is axiomatic that to establish reasonable suspicion, an officer must be able to articulate more than an inchoate and unparticularized hunch. . . . [A]s the Supreme Court has long recognized, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) is an exception to the textual standard of probable cause. A suppression court is required to take into account the totality of the circumstances—the whole picture. When conducting a Terry analysis, it is incumbent on the suppression court to inquire, based on all of the circumstances known to the officer ex ante, whether an

- 4 -

objective basis for the seizure was present. In addition, an officer may conduct a limited search, i.e., a pat-down of the person stopped, if the officer possesses reasonable suspicion that the person stopped may be armed and dangerous.

Commonwealth v. Morrison, 166 A.3d 357, 364 (Pa. Super. 2017) (citation omitted). Stated differently, "[t]he fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate." Id.

Here, the trial court concluded that Officer Hryadil had adequate reasonable suspicion to support Appellant's investigative detention in this case:

> Neither part of the Terry analysis detains this Court very long. Officer Hryadil had sufficient suspicion that criminal activity may be afoot. He has interaction with a former student, over the age of 21, visibly intoxicated, at a public high school within his patrol area. During the escort process of [Appellant] off the property, [Officer] Hryadil noticed, as filtered through his years of experience, what he believed to be a gun in [Appellant's] waistband. Considering school is just starting for the day, [Officer] Hryadil freezes the situation by instructing [Appellant] to put his hands on his head and [the officer] touches that area. His tactile sense then confirms for him that it is, indeed, a gun. This then allowed a protective, limited search to take place. In sum, there is simply nothing unreasonable about the officer's interaction with [Appellant]. Because the touchstone of reasonableness was demonstrated by the government's proof, this court denied the request to suppress the gun.

Trial Court Opinion, 4/10/17, at 3.[2]  We agree.

Initially, Appellant argues that the reasons given by Officer Hryadil were "the very definition of a 'hunch' and was not supported by specific and articulable facts to believe that [he] was engaged in criminal activity and was armed and dangerous."  Appellant's Brief at 13.  He bases this assertion on the fact that the officer wrote in the affidavit of probable cause that it "could possibly been a gun" and, on a couple of occasions, testified at the suppression hearing that it "could possibly have been" a gun.  See N.T., 11/1/16, at 10-19.  This argument ignores not only the entirety of the officer's suppression hearing testimony, but also the totality of the circumstances presented.

"It is well settled that to justify their decision to stop and detain [an] appellant, the police need not establish their suspicions to a level of certainty, a preponderance, or even a fair probability."  Commonwealth v. Epps, 608 A.2d 1095, 1096 (Pa. Super. 1992).  In this case, the trial court specifically found that Officer Hryadil noticed "a bulge sticking in [Appellant's] waistband and it looked like the end of a firearm."  Trial Court Opinion, 4/1/17, at 2.  On appeal from the grant of a suppression order, the Superior Court is not at liberty to reject a finding of fact that is based on credibility.  Commonwealth v. Parker, 152 A.3d 309, 315 (Pa. Super. 2016) (citation omitted).  Thus,

_____

[2] The trial court further found that upon discovering the weapon, "the circumstances quickly materialized into probable cause to arrest" Appellant and the marijuana found on his person was properly seized as incident to that arrest.

Appellant's assertion that the officer saw no more than "an unknown and non-descript bulge protruding from clothing," Appellant's Brief at 15, is unsupported by the record. Further, although Officer Hryadil testified on one occasion that he was not one hundred percent sure the concealed object was a gun, our case law does not require such certainty. Epps, supra.

Moreover, the cases discussed by Appellant are inapposite. In Commonwealth v. Martinez, 588 A.2d 513 (Pa. Super. 1991) a group of people standing on a street corner in a high crime area dispersed once they saw police approach. The police decided to stop Martinez, one of these individuals, because she was holding something that appeared as a bulge in her jacket. We affirmed the suppression of contraband found in her possession because there existed "no basis to reasonably believe she was engaged in any unusual or suspicious conduct." Martinez, 588 A.2d at 516-17. Here, the circumstances are much different—an intoxicated individual on school property who possessed what the officer reasonably believed was a handgun in his waistband.

Appellant also cites Commonwealth v Stevenson, 894 A.2d 759 (Pa. Super. 2006) to suggest that Officer Hryadil was required to provide more specific testimony regarding his training in the ability to recognize firearms. It is well settled that such specifics are not required when determining whether reasonable suspicion exists. See Commonwealth v. Carter, 105 A.3d 765, 774 (Pa. Super. 2014) (en banc) (explaining that while specialized training received by a police officer can be relevant to a reasonable suspicion analysis,

it is not necessary for the officer to have such training in order for his observations to help establish a reasonable suspicion). Here, the trial court was satisfied that Officer Hryadil's almost sixteen years of experience as a police officer, as well as a gun owner, was sufficient for him to reasonably believe he saw the butt end of a handgun in Appellant's waistband.

Finally, we do not believe the trial court imposed a lesser standard of suspicion because the stop occurred on school property as opposed to a stop on a public street. Rather, the trial court properly considered that Appellant was on school property as part of the totality of the circumstances presented to the officer. Additionally, although Appellant's observed behavior might not have been "violent and disruptive," his public drunkenness, a crime in and of itself,[3] while armed with a gun, on school property when classes were about to begin, was inherently dangerous.

In sum, because our review of the record supports the trial court's conclusion that Officer Hryadil possessed a reasonable suspicion that Appellant was armed, we affirm its decision denying Appellant's suppression motion.

Judgment of sentence affirmed.

_____

[3] 18 Pa.C.S.A. § 912.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/02/2018