J-S80006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHANNON DUKES | : | |
| | : | |
| Appellant | : | No. 1765 EDA 2016 |

Appeal from the Judgment of Sentence May 9, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013075-2014

BEFORE:  BOWES, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 27, 2018**

Shannon Dukes appeals from the judgment of sentence of seventeen to thirty-four years incarceration imposed after he was convicted of robbery, possession of a firearm by a prohibited person, firearms not to be carried without a license, carrying a firearm in public in Philadelphia, and possession of an instrument of crime.  We affirm.

The pertinent facts are as follows.  At approximately 12:50 a.m., on November 4, 2014, the victim, Santino Nunez, returned home from work. While parking his vehicle on Annsbury Street in Philadelphia, Mr. Nunez observed four black men proceeding northbound on Fourth Street.  Mr. Nunez waited in his car for a few minutes before walking to his home, which was located one block north at 404 West Raymond Street.  When Mr. Nunez turned onto West Raymond Street, he saw two of the men walking towards him.  As he was about to enter his home, Mr. Nunez became aware that

those two men were on the street directly behind him.  The taller of the two men brandished a silver handgun, jumped onto Mr. Nunez's porch, and attempted to rob him by placing the gun within inches of his face and asking for the items in his possession.  Mr. Nunez feared for his own life, and that of his family inside the home.  When the assailant realized that Mr. Nunez, who was eighteen at the time of the attack, was a young man, he relented, and the two men fled towards Fourth Street without taking anything from the victim.

Mr. Nunez immediately reported the incident to the police.  Shortly thereafter, Officers Richard Hough and William Lynch, who were responding to an armed robbery by a group of black men on nearby Annsbury Street, witnessed Appellant, his co-defendant Brandon Bagby, and another individual walking in the area.  The officers noted that men matched the description of the Annsbury Street assailants provided by the flash information.  As they approached the group, Bagby fled.  After a brief chase, he was apprehended, and the police recovered a silver handgun, which Bagby attempted to abandon while fleeing.  The police then transported Mr. Nunez to where they were holding Appellant on suspicion of armed robbery. Mr. Nunez immediately identified Appellant and Bagby as his attackers.

Based on the foregoing, Appellant was charged with the above-enumerated offenses.  Prior to trial, he filed a motion to suppress Mr. Nunez's identification arguing, *inter alia*, that his detention was not supported by reasonable suspicion, and that he was subjected to an unduly

suggestive identification procedure. On November 10, 2015, following a hearing on the matter, the trial court denied Appellant's motion to suppress. On November 16, 2015, a jury convicted Appellant as described above, and, subsequently, the court imposed an aggregate sentence of seventeen to thirty-four years imprisonment. Appellant filed a timely notice of appeal, and was granted permission to file an untimely Rule 1925(b) concise statement of errors complained of on appeal. The trial court authored its Rule 1925(a) opinion, and this matter is now ready for our review.

Appellant raises three questions for our review:

1. Did the trial court commit an error of law by denying [A]ppellant's suppression motion?

2. Was the evidence presented at trial sufficient to uphold the jury's verdict of guilty?

3. Does the jury's verdict of guilty shock one's sense of justice?

Appellant's brief at 6-7.

Appellant first challenges the trial court's denial of his motion to suppress Mr. Nunez's out-of-court identification. When reviewing the denial of a motion to suppress

> we are limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the

appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of the courts below are subject to plenary review.

*Commonwealth v. Parker*, 161 A.3d 357, 361-362 (Pa.Super. 2017) (citation omitted). Further, "[w]hen reviewing the suppression court's rulings, we consider only the suppression record." *Id*. at 362 (citation omitted).

Appellant's challenge to the suppression court's ruling is multi-faceted. First, he claims that the trial court should have suppressed Mr. Nunez's out-of-court identification because the police utilized an unduly suggestive identification procedure. The Commonwealth contends that Appellant waived this claim by failing to pursue it at the suppression hearing. Upon review of the record, we agree with the Commonwealth's assessment. Although Appellant alleged that he was subjected to an unduly suggestive identification procedure in his motion to suppress, he did not raise this as a basis for relief during the suppression hearing. *See* N.T. Suppression Hearing, 11/10/15, at 5. Since Appellant did not raise this claim before the suppression court, we are precluded from conducting meaningful appellate review. Thus, this claim is waived. Pa.R.A.P. 302.

Next, Appellant argues that the police lacked reasonable suspicion when he was detained, and thus, Mr. Nunez's out-of-court identification should have been suppressed as fruit of the poisonous tree. It is well-

established that there are three categories of encounters between citizens and the police:

> (1) A mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no compulsion to stop or to respond. Second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Baldwin*, 147 A.3d 1200, 1202 (Pa.Super. 2016) (citation omitted). In order to establish reasonable suspicion, an officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch" that a suspect committed a crime. *Commonwealth v. Williams*, 125 A.3d 425, 432 (Pa.Super. 2015) (citation omitted). In making this determination, we consider the totality of the circumstances. *Id*. Further, "[a]mong the factors to be considered in establishing a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight." *Commonwealth v. Morrison*, 166 A.3d 357, 364-65 (Pa.Super. 2017) (citation omitted).

Essentially, Appellant calls into question the reliability of the information upon which the police based its investigatory stop. He notes that Officers Hough and Lynch were responding to a separate flash information related to an alleged armed robbery on Annsbury Street, as

opposed to the suspected armed robbery which occurred shortly thereafter on West Raymond Avenue. Appellant contends that it was improper for the police to have Mr. Nunez attempt to identify his assailants since the police were initially responding to a separate incident. In this vein, he asserts that the description of the suspects varied between the two incidents, and in any case, Appellant did not match those descriptions. Moreover, he argues that he was seized three blocks south of West Raymond Street, whereas the flash information indicated that the suspects were last seen fleeing north from West Raymond Street. Thus, he concludes that, based on these circumstances, it was unreasonable for the police to detain Appellant and to permit Mr. Nunez to make an on-scene identification.

At the suppression hearing, Philadelphia Police Officer Richard Hough testified as follows. On November 4, 2014, he was dispatched to the area around West Raymond Street at 12:53 a.m., following a report of an armed encounter on Annsbury Street. N.T. Suppression Hearing, 11/10/15, at 6-8. The dispatch report described the suspects as "[t]hree black males, one, black leather jacket, red hoodie; number two, black hoodie; number three, black hoodie, armed with guns trying to break in the front door." *Id*. at 9.

While traveling on Bristol Street, Officer Hough observed three black males, "which fit the description almost to a T walking west on the highway." *Id*. at 10. His partner requested that the men stop, at which point, Bagby fled north on Fourth Street. *Id*. at 11. Officer Hough stayed with the other

two men, including Appellant, until Mr. Nunez arrived and identified Appellant. *Id*. at 11-13.

On cross-examination, Officer Hough testified that, at the time of their seizure, one suspect was wearing a dark green jacket and red shirt, the second was wearing a black jacket with green pants, and the third male was wearing a black hoodie.[1] *Id*. at 15-16. In addition, he noted that the dispatch report for the West Raymond Street incident described those suspects as "four black males, black coat, jeans, Tims [(Timberland Boots)], clean shaven, dark complected, with gun. No flash on the other. Nothing taken. Last going northbound on 4th Street. Male complainant inside." *Id*. at 17-18. He then read into the record the biographical information pertaining to Appellant taken after his arrest, which indicated, "[Appellant] was [wearing a] dark green jacket over red shirt, dark hat, jeans, tan boots." *Id*. at 20. He conceded that Bristol Street was three blocks south of West Raymond Street. *Id*. at 21. However, at the time of the stop, he did not observe anyone else in the area that matched the flash information. *Id*. at 23.

_____

[1] Although Officer Hough initially testified that Bagby was wearing a dark green jacket and red shirt at the time of his apprehension, he later clarified that he had Bagby and Appellant confused. N.T. Suppression, 11/10/15, at 22-24. He noted that Bagby was wearing "a black jacket, green camo pants." *Id*. at 22.

Detective William Lynch also offered testimony on behalf of the Commonwealth. Detective, then Officer, Lynch, was partners with Officer Hough at the time of the incident. *Id*. at 28. Detective Lynch corroborated much of Officer Hough's account of the event in question. In addition, he clarified that Appellant's jacket appeared to be a leather jacket "because it was made of a shiny material." *Id*. at 32. Further, Detective Lynch asserted that the area was known for "numerous gunpoint robberies," and characterized it as a high crime area. *Id*. at 33-35.

When reviewing the record of the suppression hearing, we find that, in light of the totality of the circumstances, the suppression court did not err in denying Appellant's motion to suppress. Instantly, we observe that, at the time of the stop, Officers Hough and Lynch were responding to the report of an armed robbery, conveyed to the 911 operator by the purported victim. That victim described her assailants as three black men, two of which were wearing black hoodies, and one of which was wearing a black leather jacket with a red hoodie underneath. The officers observed Appellant with two other black men only three blocks from the alleged incident, and only minutes after the initial report. At that time, the three men were wearing dark clothing similar to that described in the flash information, and Appellant wore a red shirt underneath his jacket. Officer Hough stated that the individuals matched the description provided, and that there were no other individuals in the area. Moreover, when the officers attempted to question the men, Bagby fled the scene and attempted to abandon a firearm in his

possession.  Officer Lynch testified that the area was a high crime area, and stated that Appellant's black jacket appeared to be leather, even though he later discovered that it was not.

In light of the above, when considering the totality of the circumstances, we find that the officers articulated sufficient reasons to establish Appellant's seizure was supported by reasonable suspicion. ***Williams***, ***supra***; ***Morrison***, ***supra***.  In so finding, we are not persuaded by Appellant's contention that discrepancies in the descriptions provided by the flash information, and Appellant's actual appearance at the time of the arrest, undermined the officers' reasonable belief that these men were involved in the armed robbery nearby.

Moreover, since the incident involving Mr. Nunez occurred minutes later and only one street away from the Annsbury Street armed robbery, it was reasonable for the officers to transport Mr. Nunez for an on-sight identification.  To the extent that Appellant's argument can be construed as asserting that an officer's decision to transport a victim to provide an on-sight identification must be supported by reasonable suspicion, he cites no case law in support of this position, and we will not hold that to be the case herein.  As Appellant's investigatory detention was supported by reasonable suspicion, the suppression court did not err in denying his motion to suppress.  Hence, no relief is due.

Appellant's second issue disputes the sufficiency of the evidence underpinning his conviction. In addressing a sufficiency challenge, we are guided by the following principles:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Sunealitis*, 153 A.3d 414, 419 (Pa.Super. 2016) (citation omitted).

Appellant does not directly contest any of the elements of the offenses he was convicted of, but rather, he challenges Mr. Nunez's identification of him as his attacker. He posits that Mr. Nunez's identification was tainted by the police, and his testimony in this regard was too unreliable and contradictory to be considered a sufficient basis for his conviction. Appellant highlights portions of Mr. Nunez's testimony where he described Appellant as "clean shaven" at the time of the attack, when, in fact, Appellant had facial hair. Further, he emphasizes Mr. Nunez's statements indicating the porch where the incident occurred was not well lit, that he was focused on the gun at the time of the attack, and that he had not previously seen Appellant, as further proof that Mr. Nunez's testimony was unreliable. Hence, in light of Mr. Nunez's unreliable and contradictory testimony, he concludes "[n]o

reasonable jury could have found beyond a reasonable doubt that [A]ppellant was the person who committed a robbery." Appellant's brief at 17.

Instantly, Mr. Nunez identified Appellant as his assailant in court. N.T. Trial, 11/10/15, at 37; 39. He also explained the relevant circumstances surrounding the event in question at trial. Mr. Nunez stated that, as he attempted to enter his house, "[Appellant] pulled out a gun and told me to move away from the door, to shut, up, move to the side, move to the side." *Id*. at 38. He indicated that, at this time, Appellant was "[d]irectly in my face, not even a foot away," and that the event lasted three to five minutes. *Id*. at 40-41. Mr. Nunez testified that he viewed the firearm for around "30 seconds from the moment he was pointing it at me[,]" and that he observed Appellant's face "within that whole two-minute, three-minute situation." *Id* at 41; 49. He conceded that the porch was "really dark," and that the only light was provided by nearby streetlights. *Id*. at 43.

Following the robbery, Mr. Nunez contacted police and provided them with a description of his attackers, noting that Appellant was wearing "dark blue jeans, Timberlands, and probably like a sweater." *Id*. at 47. He stated that the police officer explained to him that they had his attackers "in custody, and they wanted me to identify them." *Id*. at 46. Mr. Nunez asserted that, when he made the identification, he did so based on "what they were wearing." *Id*. at 48-49.

On cross-examination, Mr. Nunez testified that he informed the police that his attacker was clean-shaven and had a dark complexion, and that he could see Appellant's face because of the nearby streetlight. *Id*. at 70-71. He conceded that, based on the arrest photo from the night in question, Appellant had facial hair. *Id*. at 74. Nonetheless, Mr. Nunez clarified that, when he identified Appellant, he did not see hair on his face. *Id*. He explained, "I guess I missed the hair on the bottom of his face here," and that he did not see Appellant's mustache "because it's a little bit of a lighter mustache." *Id*. at 75. Further, he noted that when the police took him to identify his assailants, "I took a moment, looked at them, and said yes[,]" indicating that the men in custody were his attackers. *Id*. 76. He also clarified that the police officer who transported him to the on-scene identification did not tell him that they had apprehended his assailants, but only that they had stopped men that "matched the description that I gave." *Id*. at 83-84. Finally, Mr. Nunez testified that he could not remember if he told the dispatcher that Appellant was clean-shaven. *Id*. at 89.

When viewing this evidence in the light most favorable to the Commonwealth as verdict winner, we find that the Commonwealth established sufficient evidence to prove beyond a reasonable doubt that Appellant robbed Mr. Nunez on the night in question. Contrary to Appellant's protestations, we do not find that Mr. Nunez's testimony regarding the identity of his assailant was so unreliable and inconsistent to undermine his conviction. Mr. Nunez explained that he identified Appellant

as his attacker based largely on this clothing. Moreover, he stated that he could see Appellant's face with the aid of the streetlights, and that he was able to view Appellant for over two minutes during the encounter.

Further, although Appellant had facial hair at the time of his arrest, and Mr. Nunez may have initially described his attacker as clean-shaven, he explained that he did not see Appellant's facial hair during the incident or on-scene identification. Mr. Nunez stated that he immediately recognized Appellant as his attacker on the night in question, and identified him as such on the record during trial. The jury was free to believe all, part, or none of Mr. Nunez's testimony, ***Sunealitis***, ***supra***, and it clearly found him credible in this regard. As the record supports Mr. Nunez's identification, no relief is due.

Finally, Appellant offers a challenge to the weight of the evidence presented against him. In reviewing such a claim, we do not step into the shoes of the trial judge, but rather,

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict was against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted).

In this respect, Appellant relies primarily on his challenge to the sufficiency of the evidence, arguing "the exact same evidence upon which the jury based its verdict cannot possibly justify a guilty verdict." Appellant's brief at 17. After enunciating the appropriate standard, the trial court observed:

> In the instant case, Appellant and his co-defendant were immediately identified by [Mr. Nunez] after the police stopped Appellant, co-defendant Bagby, and David Flipper. At trial, [Mr. Nunez] identified Appellant as the individual who confronted him outside of 404 West Raymond Street and pointed a silver handgun directly in his face. Here, the jury chose to credit the testimony of [Mr. Nunez], the police officers and detectives investigating the case. The fact that the jury found Appellant guilty after weighing all of the evidence does not shock one's sense of justice.

Trial Court Opinion, 1/23/16, at 5. We discern no abuse of discretion in the trial court's conclusion that Appellant's verdict was not against the weight of the evidence. Thus, this claim fails.

Judgment of Sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/18

- 14 -