**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WALTER TAYLOR | : | No. 1141 EDA 2024 |

Appeal from the Suppression Order Entered April 5, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006795-2023

BEFORE: STABILE, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                 **FILED JULY 15, 2025**

The Commonwealth appeals from the order granting Walter Taylor's motion to suppress. The Commonwealth maintains that the trial court erred in granting the motion because officers had reasonable suspicion to conduct an investigative detention of Taylor. We reverse and remand for further proceedings.

This case arose from Taylor's encounter with Officer Walter Jackson and his partner. Following this encounter, officers recovered a firearm, and Taylor was arrested and charged. Taylor moved to suppress claiming that officers did not have reasonable suspicion or probable cause to detain or arrest him. Omnibus Pre-Trial Motion, filed 11/7/23. He also maintained that officers recovered the firearm from his person following his unconstitutional seizure. N.T., Motion to Suppress, 4/5/24, at 5.

At the hearing on the motion, Officer Walter Jackson testified that in September 2023 around 5:57 p.m., he saw Taylor in the area of 6800 Dicks Avenue in Philadelphia. *Id.* at 6. At the time, Officer Jackson and his partner were in a patrol car. *Id.* at 10.[1] Officer Jackson described this area as a "problem area" due to it being a high-crime area. *Id.* at 8. He explained that he was assigned to the Five Squad Tactical Group that "goes and surveys problem areas" including the area where he first saw Taylor. *Id.* at 7, 8. He testified that he had made many firearms arrests in that area during pedestrian stops and, in his experience, common characteristics for stops that involved firearms include an individual "carrying a gun in their waistband or jacket pocket or hoodie pocket or some – sort of that way." *Id.* at 8.

Officer Jackson testified that he saw Taylor crossing the street and noticed a bulge in his front waistband. *Id.* at 10. Officer Jackson believed the bulge was a firearm. *Id.* at 17. Officer Jackson's partner was driving, and he pulled the patrol car over and asked Taylor "if he had a permit to carry." *Id.* at 10, 11. Taylor responded, "What you talking about?" *Id.* at 11. Officer Jackson's partner then opened the door of the patrol car and Taylor ran. *Id.* Both officers pursued Taylor on foot and ultimately detained him. *Id.* at 11-12. While Taylor ran, he reached for his waistband. *Id.* at 12. Officer Jackson recovered a firearm that fell from Taylor's waistband. *Id.* at 12, 15.

_____

[1] The record does not mention the name of Officer Jackson's partner.

The court granted the motion, and this timely appeal followed. **Id.** at 35. The Commonwealth raises the following question: "Did the lower court err by suppressing [Taylor's] illegally possessed gun where, after police observed a bulge in his waistband and inquired if he had a permit, [Taylor] responded by fleeing through a high[-]crime area?" Taylor's Br. at 3 (answer of trial court omitted).

When reviewing the grant of a motion to suppress we "consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." **Commonwealth v. Lyn**, 316 A.3d 1055, 1057 (Pa.Super. 2024) (citation omitted). We are bound by the suppression court's factual findings supported by the record. **See id.** However, we are not bound by the suppression court's legal conclusions. **See id.**

"The law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention,...; and (3) a custodial detention." **Commonwealth v. Dix**, 207 A.3d 383, 388 (Pa.Super. 2019) (quoting **Commonwealth v. Mackey**, 177 A.3d 221, 227 (Pa.Super. 2017) (footnote omitted)).

"A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen." **Mackey**, 177 A.3d at 227 (citation omitted). Such an encounter "carries no official compulsion to stop or respond" and does not need to "be

justified by any level of police suspicion." *Id.* (citation omitted). In contrast, a custodial detention requires probable cause. *See id.*

An investigative detention "has elements of official compulsion" and therefore "requires reasonable suspicion of unlawful activity." *Id.* (citation omitted). An investigative detention "subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest." *Commonwealth v. Morrison*, 166 A.3d 357, 364 (Pa.Super. 2017) (citation omitted). To determine whether reasonable suspicion existed, we apply a totality of the circumstances approach, which includes consideration of factors such as "tips, the reliability of the informants, time, location, and suspicious activity, including flight." *Id.* at 364-65 (citation omitted). Merely being present in a high crime area does not justify an investigative detention. *Id.* at 365. Similarly, "mere possession of a firearm does not establish reasonable suspicion to allow an officer to approach and detain an individual in order to investigate whether he or she was properly licensed to carry a firearm in public." *Commonwealth v. Ross*, 297 A.3d 787, 798 (Pa.Super. 2023) (citing *Commonwealth v. Hicks*, 208 A.3d 916, 936 (Pa. 2019)).

The Commonwealth suggests that Taylor's initial encounter with police amounted to a mere encounter. After he fled from police, it alleges that officers had reasonable suspicion to seize Taylor based on the totality of the circumstances. It notes that police saw a bulge in Taylor's waistband, the interaction occurred in a high crime area, and Taylor fled when asked whether

he had a permit to carry. The Commonwealth directs us to ***Commonwealth v. Jones***, 266 A.3d 1090 (Pa.Super. 2021) and ***Commonwealth v. Barnes***, 296 A.3d 52 (Pa.Super. 2023).

The trial court determined that the "facts support the conclusion that the interaction was an 'investigative detention,' which 'must be supported by a reasonable suspicion.'" Rule 1925(a) Opinion, ("1925(a) Op."), filed 6/14/24, at 7 (quoting ***Commonwealth v. McAdoo***, 46 A.3d 781, 784 (Pa.Super. 2012)). The court concluded that officers did not have reasonable suspicion to stop Taylor because there was no evidence "that [Taylor] had committed or was committing a crime" before officers stopped him. ***Id.*** at 9. It found that "Officer Jackson's suspicion of a firearm was simply a hunch" and distinguished the case from ***Barnes***. ***Id.*** at 10, 12.

> There are two key distinctions between the instant case and ***Barnes***. First, in ***Barnes***, the defendant was part of a group of people that dispersed after seeing the police vehicle. In the instant case, there is no evidence that [Taylor] was part of a group of people or that he started walking away after seeing the police vehicle. Second, in ***Barnes***, the officer did not engage with the defendant before he fled. In the instant case, Officer Jackson's partner pulled the police vehicle up to [Taylor] and then engaged with him by asking [Taylor] if he had a permit to carry a firearm. (N.T. at 11, 04/05/24.) After [Taylor] responded by saying "what are you talking about," instead of asking the question again, Officer Jackson's partner opened the vehicle door presumably to exit the vehicle and approach [Taylor]. (N.T. at 11, 04/05/24.) It was only then that [Taylor] fled.

***Id.*** at 12-13.

In **Barnes**, while on patrol in a high crime area, officers observed a crowd of about five or six people. As they approached in their vehicle, the crowd immediately dispersed. Police observed Barnes walking with another male. One of the officers got out of the vehicle to see if someone had a firearm or had discarded narcotics or a firearm. The officer saw Barnes walking and used his flashlight to see if Barnes had anything on his person. In response, Barnes fled, and the officer pursued him. Officers recovered a firearm in a bag that Barnes was carrying. This Court determined that the officer's interaction with Barnes amounted to an investigative detention supported by reasonable suspicion of criminal activity. We explained that the testimony of the officer "established Barnes's unprovoked flight, upon seeing Officer Kusowski, in a high-crime area." **Barnes**, 296 A.3d at 59.

In **Jones**, police observed Jones walking on the sidewalk, with an L-shaped bulge in his jacket pocket that officers immediately recognized as a firearm. **Jones**, 266 A.3d at 1092. Police drove past Jones, exited the vehicle, and had a conversation with Jones, saying "[H]ey, what's up," and asked his age. **Id.** We concluded that the officer's statements to Jones "did not transform the mere encounter into an investigatory detention" and that there was an absence of evidence suggesting coercion by the officer. **Id.** at 1096.

We conclude that the officers' initial interaction with Taylor was a mere encounter, and although the encounter after Taylor fled was an investigative detention, suppression was improper because police had reasonable suspicion. The initial interaction involved no sign of coercion. The record shows that

Taylor was walking in a high crime area with a bulge in his waistband that officers believed, based on experience, to be a firearm. The officer merely asked Taylor if he had a permit, without turning on the police vehicle's overhead lights or making any show of force. Taylor nonetheless fled, and his unprovoked flight, in combination with the other factors, gave rise to reasonable suspicion. Accordingly, we reverse the trial court's grant of suppression and remand for further proceedings. *See Commonwealth v. Rice*, 304 A.3d 1255, 1262 (Pa.Super. 2023) (concluding officers had reasonable suspicion to conduct investigative detention where officers observed appellee in a high crime area with an "L" shaped bulge in his waistband, and appellee turned and walked away from police when asked to "come here").

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/15/2025