**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Hector Luis AYALA, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 24, 2001.

Filed Feb. 6, 2002.

Thomas B. Sponaugle, York, for appellant.

James M. Reeder, Asst. Dist. Atty., York, for Com., appellee.

BEFORE: DEL SOLE, President Judge, JOHNSON, J., and CERCONE, President Judge Emeritus.

OPINION PER CURIAM:

¶ 1 Appellant, Hector Luis Ayala, appeals from his judgment of sentence entered following his conviction for possession of a controlled substance (cocaine).[1] After review, we vacate the judgment of sentence and remand for a new trial.

¶ 2 The facts of the case, which are not in dispute, as they have been gleaned from the trial court's opinion and the certified record in this matter are as follows: On July 14, 2000, at 7:56 a.m. in the City of York, Officer Blymire of the York City Police Department received a call from his dispatcher which related that an anonymous individual, who identified himself as a resident of 39 East College Avenue, had telephoned and indicated that there were two Hispanic men, one of whom was carrying a handgun, in a red Honda coupe parked in front of 39 East College Avenue. N.T. Suppression Hearing, 11/27/2000, at 6, 14. The anonymous caller had specifically stated that the driver of the car was the man holding or possessing the gun. The caller described this individual as a Hispanic male wearing a white t-shirt, glasses and having a short haircut. *Id.* at 6, 16. The caller described the passenger of the Honda as a Hispanic male with bushy black hair, but the caller did not indicate that the passenger was in possession of a gun. *Id.* at 16. The caller also gave the license plate number of the red Honda. *Id.* at 7. The address of 39 East College Avenue was an apartment building "close to" the south side of York City. *Id.* at 6–7. Officer Blymire testified that the south side of York City was an area in which there was "a significant amount of drug activity." *Id.* at 6.

¶ 3 When Officer Blymire arrived at 39 East College Avenue, he observed a red Honda parked across the street from the apartment building. He testified that he approached the car from behind and observed that the license plate number matched the one reported by the anonymous caller. *Id.* at 7. Officer Blymire testified that he saw the Hispanic male, who matched the description of the individual alleged to be in possession of the handgun, standing next to the parked vehicle. *Id.* Officer Blymire did not see that individual in possession of a handgun. *Id.* at 9. The individual standing outside the vehicle looked at the officer and then ran across the street towards the apartment building located at 39 East College Avenue. *Id.* at 7. The passenger in the vehicle, later identified as Appellant, appeared to Officer Blymire to be Hispanic and appeared to have bushy black hair, thereby matching the description of the passenger provided by the anonymous caller. *Id.* Appellant remained seated in the vehicle as Officer Blymire drove by. *Id.*

1. 35 P.S. § 780–113(a)(16).

¶ 4 Officer Blymire continued around the block and called for back-up officers to come to the scene. *Id.* at 8. When Officer Blymire came around the block the second time, the man who had been standing outside the vehicle was seen by Officer Blymire entering the apartment building located at 39 East College Avenue. *Id.* Appellant remained in a reclining position in the passenger seat. *Id.*

¶ 5 Three (3) other officers arrived on the scene and positioned themselves outside of the apartment building across the street. As Officer Blymire approached the red Honda, Appellant did not move from his reclining position in the vehicle. *Id.* at 9, 17. Officer Blymire testified that at that point he felt that Appellant "could have been a possible threat to [the police officers'] safety or an unknown [threat]." *Id.* at 9. Officer Blymire instructed Appellant to step out of the vehicle, and Appellant complied. Officer Blymire then patted down Appellant. Officer Blymire felt a cylindrical canister in Appellant's right front pocket, and Officer Blymire opined that, based upon his training and experience, this type of canister was typically used for illegal drugs. *Id.* at 10. Office Blymire then asked Appellant what the object was. Appellant stated it was bubble gum. *Id.* Officer Blymire asked if he could look inside the canister, and Appellant consented. *Id.* Inside the canister were two bags that each contained a small "white chunky rock substance." *Id.* Appellant was arrested and given his *Miranda*[2] warnings. The substance found in the canister was later field-tested positive for cocaine.

¶ 6 Appellant was formally arraigned in the York County Court of Common Pleas on October 20, 2000. On October 25, 2000, Appellant filed a Suppression Motion to suppress the cocaine seized. A Suppression Hearing was held before the Honorable John S. Kennedy on November 27, 2000. Judge Kennedy denied the motion the same day, and a bench trial was held immediately following the Suppression Hearing. Judge Kennedy found Appellant guilty of possession of cocaine. On April 30, 2001, Appellant was sentenced to time served to twelve (12) months, plus costs. Appellant filed a timely notice of appeal to this Court on May 4, 2001. Judge Kennedy ordered Appellant to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P.1925(b), and Appellant complied. This timely appeal followed.

¶ 7 Appellant raises a single issue for this Court to review on appeal:

> Did the Trial Court err in denying Appellant's Motion to Suppress cocaine where an anonymous source, who had not provided police with trustworthy information in the past, provided information that Appellant was sitting as a passenger in a car next to a driver who had a gun was stopped, detained, and patted down, at which time the police found a canister consistent with drug paraphernalia, requested consent to search, search was granted by Appellant, and cocaine was found in the canister.

Appellant's Brief at 2.

¶ 8 Appellant argues that he was subjected to an unlawful detention since the police did not have reasonable and articulable suspicion of his involvement in criminal activity to subject him to an investigative detention, nor a reasonable and articulable suspicion that he was armed and dangerous to justify the pat down search of his person. Appellant additionally contends that his consent to search the canister recovered from his pocket during the pat down search was the tainted product of his unlawful detention.

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

He therefore asserts that the Trial Court erred in denying his motion to suppress the evidence that was recovered from the canister. After careful review of the factual circumstances and governing law, we conclude that Appellant is correct.

¶ 9 Our standard of review for an appeal from a denial of a motion to suppress is as follows:

In an appeal from the denial of a motion to suppress, our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the evidence supports the factual findings of the suppression court, we may reverse only if there is an error in the legal conclusions drawn from those factual findings. As a reviewing court, we are therefore not bound by the legal conclusions of the suppression court and must reverse that court's determination if the conclusions are in error or the law is misapplied.

*Commonwealth v. Turner,* 772 A.2d 970, 972–973 (Pa.Super.2001) (*en banc*).

¶ 10 "Both the Fourth Amendment of the United States Constitution and Article 1 Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures." *Commonwealth v. Cook,* 558 Pa. 50, 53, 735 A.2d 673, 674 (1999). The Fourth Amendment to the United States Constitution provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const.Amend. IV. The Pennsylvania Constitution provides:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. Art. I, § 8. Warrantless searches and seizures are therefore unreasonable per se, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement. *In the Interest of N.L.,* 739 A.2d 564, 566 (Pa.Super.1999), *appeal denied,* 562 Pa. 672, 753 A.2d 819 (2000) (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

¶ 11 As our Court has further reminded:

The Pennsylvania Supreme Court has been vigilant in the protection of the right to privacy guaranteed by Article I, Section 8 of our state Constitution. On repeated occasions, the Court has admonished that:

The seriousness of criminal activity under investigation, whether it is the sale of drugs or the commission of a violent crime, can never be used as justification for ignoring or abandoning the constitutional right of every individual in this Commonwealth to be free from intrusions upon his or her personal liberty absent probable case.

*Commonwealth v. Polo,* [563 Pa. 218, 226], 759 A.2d 372, [376] (quoting *Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769, 775–76 (1996)).

*Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa.Super.2000), *appeal denied*, 565 Pa. 662, 775 A.2d 801 (2001). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Id.*

The first of these [interactions] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super.2000), *appeal denied*, — Pa. ——, 785 A.2d 89 (2001) (quoting *Commonwealth v. Ellis*, 541 Pa. 285, 293–94, 662 A.2d 1043, 1047–48 (1995)).

 ¶ 12 All parties and the Trial Court correctly agree that when Officer Blymire ordered Appellant to step from the vehicle, he was, at that point in time, subjected to an investigative detention by Officer Blymire. If a reasonable person does not feel free to terminate an encounter with the police and leave the scene, then a seizure of that person has occurred. *Commonwealth v. McClease*, 750 A.2d 320, 325 (Pa.Super.2000). When Officer Blymire ordered Appellant from the car, we have little difficulty in concluding that a reasonable person in Appellant's position would not have felt free to terminate the encounter with Officer Blymire at that point and leave the scene. *See also Commonwealth v. DeHart*, 745 A.2d 633, 637 (Pa.Super.2000) (when officers ordered driver and passenger to get out of the vehicle,

encounter had attained the status of an investigative detention).

 ¶ 13 The police are permitted to stop and briefly detain citizens only when they have reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot. *Commonwealth v. Zhahir*, 561 Pa. 545, 552, 751 A.2d 1153, 1156 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)); *Commonwealth v. Melendez*, 544 Pa. 323, 328, 676 A.2d 226, 228 (1996); *Commonwealth v. Hicks*, 434 Pa. 153, 160, 253 A.2d 276, 280 (1969). In determining whether reasonable suspicion exists for an investigative detention, or as it is also known in the common legal vernacular, a "*Terry* stop," the inquiry is the same under both the Fourth Amendment of the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution. *Commonwealth v. Cook*, 558 Pa. 50, 57, 735 A.2d 673, 677 (1999); *Commonwealth v. Jackson*, 548 Pa. 484, 488, 698 A.2d 571, 573 (1997). "The fundamental inquiry is an objective one, namely, whether 'the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate.'" *Zhahir, supra,* at 552, 751 A.2d at 1156 (citing *Terry, supra,* 392 U.S. at 21–22, 88 S.Ct. at 1880). In order to determine whether the police had a reasonable suspicion to subject an individual to an investigative detention, the totality of the factual circumstances which existed at the time of the investigative detention must be considered. *Id.* (citing *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). "Among the factors to be considered in establishing a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight." *Commonwealth v. Gray*, 784 A.2d 137, 142 (Pa.Super.2001).

¶ 14 This standard is very narrow, however, in that it requires a "particularized and objective basis for suspecting the *particular person stopped* of criminal activity." *In re D.M.*, 566 Pa. 445, 781 A.2d 1161, 1163 (2001) (quoting *Cortez, supra*) (emphasis supplied). As our Court has elaborated in a prior case:

> [I]n order for a stop to be reasonable under *Terry* [ ], the police officer's reasonable and articulable belief that criminal activity was afoot must be linked with his observation of suspicious or irregular behavior on the part of the particular defendant stopped. Mere presence near a high crime area ... or in the vicinity of a recently reported crime ... does not justify a stop under *Terry*. Conversely, an officer's observation of irregular behavior without a concurrent belief that crime is afoot also renders a stop unreasonable.

*Commonwealth v. Espada*, 364 Pa.Super. 604, 528 A.2d 968, 970 (1987) (citations omitted); *Commonwealth v. Lopez*, 415 Pa.Super. 252, 609 A.2d 177, 180 (1992), *appeal denied*, 533 Pa. 598, 617 A.2d 1273 (1992); *Commonwealth v. Kearney*, 411 Pa.Super. 274, 601 A.2d 346, 348 (1992); *Commonwealth v. Wilson*, 440 Pa.Super. 269, 655 A.2d 557, 560–561 (1995); *Commonwealth v. Gayle*, 449 Pa.Super. 247, 673 A.2d 927, 931 (1996).

¶ 15 Thus, the relevant inquiry in the case at bar is whether the totality of the factual circumstances gave Officer Blymire reasonable suspicion of Appellant's involvement in criminal activity in order to justify subjecting Appellant to an investigative detention. Officer Blymire arrived at 39 East College Avenue as the result of an anonymous tip that two individuals were in a red car in front of this particular address. The identity or reliability of the individual providing the tip was unknown to Officer Blymire. The anonymous tipster was identified only as a "resident" of the apartment building at 39 East College Avenue. N.T. Suppression Hearing, *supra*, at 13–14. The tip specifically described the driver of the car and stated that this individual was either holding a gun or in possession of a gun. N.T. Suppression Hearing, *supra*, at 6. The tipster did not indicate in any way that the passenger of the vehicle was in possession of a gun.

¶ 16 Our Supreme Court has made abundantly clear that a radio dispatch based on information provided from an informant whose identity is unknown, and which accuses an individual of involvement in criminal activity, will not, standing alone, provide the requisite basis for an investigatory detention of a person who happens to match the physical description of the accused individual provided by the tipster. As our Supreme Court has emphasized in summarizing its relevant holdings:

> Because of its unreliability, an anonymous radio call alone is insufficient to establish a reasonable suspicion of criminal activity. [*Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571 (1997); *Commonwealth v. Hawkins*, 547 Pa. 652, 692 A.2d 1068 (1997)]. The Court in *Jackson* further explained that the fact that the police proceeded to the designated location and saw a person matching the description in the call did not corroborate any alleged criminal activity. *Jackson*, 548 Pa. at 492, 698 A.2d at 574–75 (quoting *Hawkins*, 547 Pa. at 656–57, 692 A.2d 1068) Since anyone can describe a person who is standing in a particular location, "something more is needed to corroborate the caller's allegations of criminal conduct." *Id.* In the typical anonymous caller situation, the police will need an independent basis to establish reasonable suspicion. *Id.*

As explained in *Hawkins,* where the police are acting on information supplied anonymously, the public will receive its full measure of protection by police who act within constitutional restraints. *Hawkins,* 547 Pa. at 657–58, 692 A.2d at 1071. When the police receive unverified information that a person is engaged in illegal activity, the police may observe the suspect and conduct an investigation. If police surveillance produces a reasonable suspicion of criminal conduct, the suspect may be stopped and questioned. *Id.*

*Commonwealth v. Wimbush,* 561 Pa. 368, 376–377, 750 A.2d 807, 811 (2000).

¶ 17 Thus, when Officer. Blymire received the radio dispatch, which relayed the information from the anonymous informant, he could certainly act on this information by going to the address specified in the tip and commencing an investigation. However, once at the address he was not permitted to conduct an investigative detention of individuals who matched the physical description given in the tip, absent some independent corroborating basis that gave rise to a reasonable belief on his part that those individuals were engaged in criminal activity. There was no such independent factual basis that would lead Officer Blymire to reasonably suspect Appellant of involvement in criminal activity.

¶ 18 In the first place the tip itself provided absolutely no basis upon which Officer Blymire could conclude that Appellant was armed. The anonymous informant specifically identified the driver of the Honda as the individual in possession of the gun. The tip made no reference to the passenger as being armed or otherwise involved in criminal activity. Officer Blymire observed the individual matching the description of the allegedly armed driver standing outside of the car and could clearly see that individual possessed no weapon. Appellant, who matched the description of the passenger given in the tip, was seated in the passenger seat when Officer Blymire observed him. Thus, Officer Blymire had no reasonable basis upon which to conclude that Appellant was the armed individual referred to by the tipster.

¶ 19 Moreover, and importantly, Appellant did nothing whatsoever in response to the initial appearance of Officer Blymire, or in response to his companion's actions of running towards the apartment complex. Neither did Appellant move from his seated position in the time that it took for Officer Blymire to radio for backup and drive around the block. Indeed, when Officer Blymire later exited his vehicle after other officers had arrived and approached the vehicle, Appellant still remained in the exact position in which Officer Blymire had first seen him. It is clear then that these circumstances, examined both individually and in conjunction with one another, did not give Officer Blymire the requisite reasonable suspicion to effectuate an investigative detention of Appellant.

 ¶ 20 Officer Blymire merely observed Appellant reclining in the passenger seat of a car which was parked in an area "close to" a high crime area. Our caselaw is quite emphatic that an individual's mere presence in a high crime area is manifestly insufficient to justify a *Terry* stop. *See e.g. In re D.M., supra; Cook, supra; In re M.D.,* 781 A.2d 192, 197 (Pa.Super.2001). Therefore, it is abundantly plain that simply being physically present in a vehicle which is parked near a high crime area cannot provide the requisite reasonable suspicion for an investigative detention.

 ¶ 21 The only thing which Officer Blymire observed, that was arguably out of the ordinary, was the fact that the driver of the parked car ran across the street when Officer Blymire approached. We are cognizant of our Supreme Court's hold-

ing in *In re D.M., supra,* that flight of an individual in a high crime area, coupled with a prior anonymous tip that a person matching the description of the fleeing individual was in possession of a gun, will give rise to the requisite reasonable suspicion for police officers to detain the fleeing individual. However, here it was not the fleeing individual whom the police officer stopped, but rather the individual's companion, who did not flee at the sight of the police. Indeed, when Appellant was confronted with the presence of the police he elected to remain where he was and to continue his lawful conduct of reclining in the passenger seat. Appellant did nothing out of the ordinary in response to the police presence, which would have given rise to any reasonable suspicion of his involvement in criminal activity.

¶ 22 As discussed, *supra,* the police must have individualized and particularized reasonable suspicion that the specific person stopped was involved in criminal activity. *In re D.M.; Espada, supra.* Here there was no such individualized or particularized suspicion that Appellant was involved in criminal activity. His companion's conduct of fleeing at the sight of Officer Blymire cannot be imputed to Appellant. *See Espada, supra,* (no reasonable suspicion existed to detain individual when his companions fled upon the approach of a police vehicle and appellant continued to normally walk down the street in the direction of the police vehicle). As Officer Blymire explicitly acknowledged, Appellant himself did nothing suspicious prior to his request that Appellant step out of the car. *See* N.T. Suppression Hearing, *supra,* at 17. Consequently, when Officer Blymire ordered him out of the car, Appellant was unjustifiably subjected to an investigative detention in the absence of reasonable suspicion. This violated his absolute right under the United States and Pennsylvania Constitutions to be free of an unlawful seizure of his person.

¶ 23 Since we have determined that Appellant was subjected to an unlawful detention, we must examine whether his consent to search the cylinder recovered during the frisk of his person was the product of the unlawful detention. As our Supreme Court has recognized:

> Where . . . a consensual search has been preceded by an unlawful seizure, the exclusionary rule requires suppression of the evidence obtained absent a demonstration by the government both of a sufficient break in the causal chain between the illegality and the seizure of evidence, thus assuring that the search is not an exploitation of the prior illegality, and of voluntariness.

*Commonwealth v. Strickler,* 563 Pa. 47, 57, 757 A.2d 884, 889 (2000); *Commonwealth v. Freeman,* 563 Pa. 82, 88, 757 A.2d 903, 906 (2000). The three (3) relevant factors to be examined in determining whether an unlawfully detained individual's consent to search is an independent act of free will or the product of the illegal detention are the temporal proximity of the detention and the consent, any intervening circumstances, and, particularly, the purpose and flagrancy of the officer's unlawful conduct. *Freeman,* at 92, 757 A.2d at 909.

¶ 24 Here Officer Blymire frisked Appellant as soon as Appellant exited the vehicle. The cylinder containing the small amount of cocaine was taken from Appellant's pocket during the pat down search. Officer Blymire requested consent to look inside immediately after he recovered the cylinder from Appellant's pocket. Clearly under these circumstances Appellant's "consent" was the direct product of the unlawful detention and seizure of his person. As such the contraband recovered from the cylinder was the fruit of the poisonous tree and should have been suppressed. *See Freeman, supra; Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct.

407, 9 L.Ed.2d 441 (1963) (evidence obtained as a result of an illegal search is the "fruit of the poisonous tree" of the illegal detention and must be suppressed).

¶ 25 Judgment of sentence vacated. Case remanded for a new trial absent the suppressed evidence. Jurisdiction is relinquished.