J-S49024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID WILLIS GROFF | |
| Appellant | No. 1554 MDA 2017 |

Appeal from the Judgment of Sentence imposed September 27, 2017
In the Court of Common Pleas of Lancaster County
Criminal Division at No: CP-36-CR-0004088-2016

BEFORE:  SHOGAN, J., STABILE, J., and STEVENS, P.J.E.*

MEMORANDUM BY STABILE, J.:                          **FILED NOVEMBER 30, 2018**

Appellant, David Willis Groff, appeals from the judgment of sentence imposed on September 27, 2017 in the Court of Common Pleas of Lancaster County, following his conviction of possession with intent to deliver ("PWID") and possession of drug paraphernalia.[1]  Appellant asserts trial court error for refusing to suppress evidence taken from him following an unlawful detention and illegal search.  Following review, we reverse and remand.

In its Rule 1925(a) opinion, the trial court stated, "Here, the officer had articulable facts that supported the stop of [Appellant]."  Trial Court Opinion,

---

* Former Justice specially assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30) and 780-113(a)(32), respectively.

1/2/18, at 3 (unnumbered).  The court proceeded to summarize the facts of the case, with references to the suppression hearing transcript, as follows:

> Officers Michael Zimmerman and Jed Custer were dispatched at 1:45 a.m. [on March 13, 2016,] after receiving a call from a private citizen, Donald Meier, who observed a man laying (*sic*) in the middle of the road.  Mr. Meier reported that he rolled down his window and asked the man if he was okay, and the man shouted an obscenity at him and ran behind a nearby building.  Mr. Meier described the man as a white scruffy male wearing a coat and hat. **About two minutes after talking to Mr. Meier, Officer Custer located two men behind a nearby bank, both matching the description that Mr. Meier gave to the Officers.**
>
> Officer Zimmerman spoke with [Appellant] and testified that he "seemed extremely nervous" and was "also getting very agitated" and pacing back and forth.  After checking warrants, Officer Zimmerman went back to speak with [Appellant], and noticed the smell of burnt marijuana.  Officer Zimmerman then asked [Appellant] if he had any marijuana, and [Appellant] pulled out a glass pipe that appeared to have marijuana residue in it.  After finding the glass pipe, Officer Zimmerman placed [Appellant] under arrest and searched him incident to arrest.  Officer Zimmerman found two clear plastic bags containing methamphetamine, and a small digital scale in [Appellant's] left pocket.

Trial Court Opinion, 1/2/18, at 3 (unnumbered) (emphasis added) (references to notes of testimony omitted).[2]

---

[2] The court's factual findings are set forth in full in the above-quoted excerpt from the court's Rule 1925(a) opinion.  We note the court did not enter a statement of findings of fact and conclusions of law at the conclusion of the suppression hearing in accordance with Pa.R.Crim.P. 581(I).  However, where the suppression court fails to abide by Rule 581(I), we may look to the trial court's Rule 1925(a) for its findings of fact as well as its conclusions of law. ***See Commonwealth v. Reppert***, 814 A.2d 1196, 1200 (Pa. Super. 2002) (*en banc*).

Appellant was arrested and charged with PWID (methamphetamine) and possession of drug paraphernalia. In a counseled omnibus pretrial motion filed on October 6, 2016, Appellant sought to suppress identification information and statements Appellant provided to police at the time of his arrest as well as items located on his person, *i.e.*, a glass smoking device containing suspected marijuana residue, a digital scale, and a pouch containing suspected methamphetamine. He also sought suppression of statements made subsequent to his arrest. The court conducted a suppression hearing on July 10, 2017.

At the conclusion of the hearing, the court heard argument and then denied the suppression motion, announcing:

> Now, I mean, I'll allow this is a close call, but honestly, I think the hour of the morning, the location they're found, it seems to me that it was reasonable for the officers to look into this further to see whether there was anything unlawful going on here. And as they did, they determined certain things that, in my opinion, don't violate your client's constitutional rights.

Notes of Testimony ("N.T."), Suppression Hearing, 7/10/17, at 38.

In its Rule 1925(a) opinion, the trial court explained:

> Under the totality of the circumstances, the officers possessed the necessary amount of reasonable suspicion to stop and detain [Appellant]. During his initial encounter with Officer Zimmerman, [Appellant] was extremely agitated and nervous, and was pacing back and forth. The court noted that very little time elapsed from the time Mr. Meier observed a man lying in the street, to when [Appellant] and another man were found nearby.[15] The court remarked further that given "the hour of the morning, the location they're found, it seems to me that it was reasonable for the officers to look into this further to see whether there was anything unlawful going on here."[16]

- 3 -

<sup></sup>15 N.T. at 38.
16 *Id.*

*Id.* at 3-4 (unnumbered) (some capitalization omitted).

A bench trial on the drug charges immediately followed the suppression hearing.  The trial court found Appellant guilty and, on September 27, 2017, sentenced Appellant to a term of one year less one day to two years less one day in county prison plus two years' probation for PWID, and one year of probation for possession of drug paraphernalia, concurrent with the probation imposed for PWID.  This timely appeal followed.  Appellant and the trial court complied with Pa.R.A.P. 1925.

> In this appeal, Appellant asks us to consider one issue:
>
> Did the trial court err in denying the Appellant's omnibus pretrial motion seeking to suppress evidence taken from the Appellant when members of the New Holland Police Department subjected the Appellant to an unlawful detention and attendant illegal search because they lacked reasonable suspicion based on specific and articulable facts to believe that the Appellant was engaged in criminal activity?

Appellant's Brief at 5 (some capitalization omitted).

As a challenge to denial of suppression, we apply the following standard of review:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as

- 4 -

a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (quoting *Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa. Super. 2015) (alterations in original) (citation omitted)). "Factual findings wholly lacking in evidence, however, may be rejected." *Commonwealth v. Burnside*, 625 A.2d 678, 680 (Pa. Super. 1993) (quoting *Commonwealth v. Bennett*, 604 A.2d 276, 277 (Pa. Super. 1992) (citations omitted). Further:

Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Smith*, 164 A.3d at 1257 (quoting *Jones*, 121 A.3d at 526-27) (alteration in original) (additional citations omitted).

Appellant argues that the police unlawfully detained and searched him without reasonable suspicion. Therefore, they lacked probable cause to arrest him without a warrant and the fruits of that arrest should have been suppressed. As required by *Smith* and *Jones*, we must first consider the Commonwealth's uncontradicted evidence to determine whether the suppression court's factual findings are supported by the record. As authorized by *Burnside*, we may reject the findings that are unsupported in the record.

- 5 -

Having reviewed the transcript of the suppression hearing, we conclude the trial court's factual findings are unsupported by the evidence in one important respect. Officer Zimmerman stated that both men fit the dispatcher's description as scruffy white males wearing a coat and hat. Notes of Testimony ("N.T."), Suppression Hearing, 7/10/17, at 11. While Officer Custer acknowledged that "technically, both of them could have possibly been the person that was laying (*sic*) in the middle of the road[,]" *id.* at 28, his report reflects that the male who best fit the description was Sizemore. *Id.* at 29. The court appeared to recognize that fact when it entertained argument regarding reasonable suspicion following the testimony and commented, "Well, that - - the reasonable suspicion is what? They're the only two guys that were in the vicinity when the police arrived, and one of them, not [Appellant], happens to fit the description perhaps that they were given?" *Id.* at 32.

Again, the trial court stated, "About two minutes after talking to Mr. Meier, Officer Custer located two men behind a nearby bank, both matching the description that Mr. Meier gave to the Officers." Trial Court Opinion, 1/2/18, at 3 (unnumbered). However, the transcript reflects that, while both "technically" could have been the person in the road, the one who best fit the description identified himself as Sizemore. N.T., Suppression Hearing, 7/10/17, at 28-29. To the extent the trial court's factual finding is not an accurate reflection of the testimony of record, we are not bound by its finding

in that regard. *In re M.D.*, 781 A.2d 192, 195-96 (Pa. Super. 2001) (where record did not support trial court's conclusion that appellant matched the description of the robbery suspect, this Court was not bound by the court's finding of fact relative to appellant's appearance where "the record permits only the conclusion that appellant 'partially fit the description' of the robbery suspect").

We next consider whether the suppression court properly applied the law to the facts. As explained above, the suppression court's conclusions of law are subject to plenary review. *Smith*, 164 A.3d at 1256.

The trial court explained that Pennsylvania courts have long followed *Terry v. Ohio*, 392 U.S. 1 (1968), which stands for the proposition that "officers may stop an individual for an investigatory detention if they have reasonable suspicion that criminal activity is 'afoot.'" Trial Court Opinion, 1/2/18, at 2 (unnumbered). The court continued:

> Reasonable suspicion exists where a police officer can point to specific and articulable facts which, taken together with rational inferences from those facts, justify an intrusion. In order for a stop to be reasonable, the officer's reasonable and articulable belief that criminal activity was afoot must be linked with his observation of suspicious behavior on the part of the defendant.

*Id.* (citing *Terry*, 392 U.S. at 22,[3] and *Commonwealth v. Ayala*, 791 A.2d 1202, 1209 (Pa. Super. 2002)). As this Court recognized in *Ayala,* "This

---

[3] In *Terry*, the Supreme Court explained:

standard is very narrow, however, in that it requires a 'particularized and objective basis for suspecting the **particular person stopped** of criminal activity.'"  **Id.** at 1209 (citations and internal quotations omitted) (emphasis in original).

As this Court reiterated in **Commonwealth v. Davis**, 102 A.3d 996 (Pa. Super. 2014):

> The reasonable suspicion necessary to conduct a **Terry** frisk and, in fact, all investigative detentions is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

**Id.** at 999 (quoting **Commonwealth v. Fell**, 901 A.2d 542, 545 (Pa. Super. 2006) (in turn quoting **Arizona v. White**, 496 U.S. 325, 330 (1990)).  "Yet, . . . reasonable suspicion does not require that the activity in question must

_____

> [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.  The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances.  And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?

**Id.**, 392 U.S. at 21-22 (footnotes omitted).

- 8 -

be unquestionably criminal before an officer may investigate further. Rather, the test is what it purports to be—it requires a **suspicion** of criminal conduct that is reasonable based upon the facts of the matter." **Id** at 1000 (quoting **Commonwealth v. Rogers**, 849 A.2d 1185, 1190 (Pa. 2004) (emphasis in original)).

Moreover:

In order for a stop to be reasonable under **Terry** [], the police officer's reasonable and articulable belief that criminal activity was afoot must be linked with his observation of suspicious or irregular behavior on the part of the particular defendant stopped. Mere presence near a high crime area . . . or in the vicinity of a recently reported crime . . . does not justify a stop under **Terry**. Conversely, an officer's observation of irregular behavior without a concurrent belief that crime is afoot also renders a stop unreasonable.

**Ayala**, 791 A.2d at 1209 (quoting **Commonwealth v. Espada**, 528 A.3d 968, 970 (Pa. Super. 1987) (additional citations omitted)).

At the suppression hearing, there was no mention of any crime afoot at the time Appellant was detained. The only "specific and articulable facts" mentioned by Officer Zimmerman were the report of a scruffy white male lying in a street who shouted an obscenity at a vehicle operator before running off, the vehicle operator's account of the male running from the scene to an area behind M&T Bank, Officer Custer's radioed message that he encountered two men standing in the M&T parking lot, Appellant's denial of being the male lying in the street, and Officer Zimmerman's sense that Appellant was very nervous and agitated as he expressed his desire to take items to his girlfriend's place

approximately 30 yards away. N.T., Suppression Hearing, 7/10/17, at 8-14. The only "specific and articulable facts" reported by Officer Custer were that he received the radio report of an unshaven, scruffy-faced male lying in the road wearing a dark blue hat and a coat, that he located two males in the M&T parking lot, and that he asked Appellant if he would agree to be searched. Appellant declined and asked to leave to go to this girlfriend's apartment. Officer Custer also acknowledged that his written report reflected that the male who fit the description given by the dispatcher identified himself as Sizemore. *Id.* at 26-29.

Other than the fact of a male lying in a roadway, an event that ended prior to the arrival of Officers Zimmerman and Custer, neither officer pointed to any specific and articulable facts that justified an intrusion. There was no suggestion whatsoever that there was criminal activity afoot. Essentially, there was nothing other than Officer Zimmerman's assessment that Appellant was nervous and agitated—something Officer Custer did not mention or even suggest—prompting Officer Zimmerman to pat down Appellant. Although Officer Zimmerman did not detect anything in the course of his pat down search, he obtained identification information from Appellant and conducted a warrant search. Up to that point in time, the only articulated basis for the detention was Appellant's nervousness. However, nervousness alone is not sufficient to support a reasonable suspicion that Appellant was engaged in unlawful activity. *Commonwealth v. Gray*, 896 A.2d 601, 606 n.7 (Pa.

Super. 2006) ("while nervous behavior is a relevant factor, nervousness alone is not dispositive and must be viewed in the totality of the circumstances. *See In re M.D.*, 781 A.2d 192 (Pa. Super. 2001).")

As this Court observed in *Commonwealth v. DeHart*, 745 A.2d 633 (Pa. Super. 2000),

> the initial questioning of Appellees yielded no tangible information that would provide "reasonable suspicion" of criminal activity. Rather, as testified to by [the trooper], he believed that [the vehicle's driver] was acting suspiciously because he avoided eye contact and was speaking softly. As indicated by the trial court, *Commonwealth v. Sierra*, 555 Pa. 170, 723 A.2d 644 (1999), reasonably suggests that a police officer's assessment that the occupants of a vehicle appear nervous does not provide reasonable suspicion for an investigative detention.

*Id.* at 637.

At the conclusion of the suppression hearing, the court mentioned that "the hour of the morning [and] the location they're found" lent support to a finding that the officers acted reasonably "to look into this further to see whether there was anything unlawful going on here." N.T., Suppression Hearing, 7/10/17, at 38. While the time of day was mentioned, neither the time nor the location was articulated by the officers as a reason for the detention. While there is no question that the encounter occurred shortly after 1:45 a.m., there is nothing in the record to suggest that the location was anything other than a bank parking lot. There was no testimony suggesting the bank parking lot was located in a high crime area. Rather, it appears the court was attempting to defend its conclusion that the officers were justified

in trying to determine "whether there was anything unlawful going on." Trial Court Opinion, 1/2/18, at 4 (unnumbered) (quoting N.T., Suppression Hearing, 7/10/17, at 38).

Based on the totality of the circumstances, we conclude there was no reasonable or articulable belief that there was any criminal activity linked to any suspicious behavior on the part of Appellant to warrant an investigatory detention. Therefore, we find the suppression court erred in denying Appellant's omnibus pretrial motion.

Judgment of sentence vacated. Order denying suppression reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2018