J. A21045/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: T.W. , A MINOR : | IN THE SUPERIOR COURT OF |
| : | PENNSYLVANIA |
| APPEAL OF : T.W. : | |
| : | No. 2390 EDA 2018 |

Appeal from the Dispositional Order Entered July 10, 2018,
in the Court of Common Pleas of Philadelphia County
Juvenile Division at No. CP-51-JV-0001105-2018

BEFORE:  BOWES, J., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED FEBRUARY 04, 2020**

T.W., a juvenile, appeals from the July 10, 2018 dispositional order entered following his adjudication of delinquency for unlawful possession of a controlled substance (Oxycodone).[1]  After careful review, we affirm.

The juvenile court summarized the relevant facts of this case as follows:

> On June 19, 2018, at approximately 4:15 a.m., Officer [Nicholas] Grant was traveling northeast bound with his partner, Officer Heeney[2], in a marked police vehicle on Sedgely Avenue in Philadelphia, Pennsylvania.   Both officers were in uniform. Officer Grant observed a silver Toyota make an illegal U-turn.  As Officer Grant was preparing to turn on his patrol lights and pursue the silver Toyota, he observed a green Chevy make the same sharp illegal U-[t]urn. Officer Grant followed, making the same U-[t]urn, and both the green Chevy and silver Toyota accelerated to a high rate of speed.  Officer Grant then turned on his lights and sirens and began pursuing both vehicles as

---

[1] 35 P.S. § 780-113(a)(16).

[2] Officer Heeney's first name is not indicated in the record.

they recklessly sped through the streets of Philadelphia, disregarding several traffic signals.

Both vehicles then made a sharp left onto Dauphin Street. While the silver Toyota was able to make the turn, the green Chevy was not and crashed into several vehicles. Officer Grant then observed two males exit the green Chevy and run southbound on Lambert Street. Instead of driving on to pursue the silver Toyota, Officers Grant and Heeney stopped to pursue the two males observed exiting and running from the green Chevy. The officers, however, lost the two males, but during their search observed the silver Toyota stopped at a red light at the intersection of 20th and Susquehanna streets.

Officers Grant and Heeney then initiated a vehicle stop of the silver Toyota while still on foot. There were three individuals in the vehicle: a female driver, a female front passenger, and [appellant], who was sitting in the rear driver's-side seat. Officers Grant and Heeney approached the vehicle and asked the individuals for identification. [Appellant] did not have identification. Officer Grant then observed [appellant] attempt to shield his body away from the [o]fficers' view and reach into his pockets. Officer Grant ordered [appellant] to stop reaching into his pockets. [Appellant] did not comply. Fearing for his safety, Officer Grant removed [appellant] from the vehicle and proceeded [to] search [appellant] for weapons by conducting an open handed pat down of the outside of [appellant's] clothing. During the open handed pat down, Officer Grant felt a hard object in [appellant's] left pants pocket that Officer Grant was unable to determine was not a firearm. Fearing that the object could be a firearm, Officer Grant reached into [appellant's] pocket and removed a glass bottle labeled "Promethazine" that had been prescribed to an individual with a different name than the one provided to Officer Grant by [appellant].

Officer Grant then placed [appellant] under arrest for possession of a controlled substance and conducted a search incident to arrest. During the search incident

- 2 -

to arrest, Officer Grant recovered from [appellant's] right pants pocket a pill bottle containing two pills, which were identified as Oxycodone, a known controlled substance.

Juvenile court opinion, 10/10/18 at 1-3 (citations to notes of testimony, footnote, and extraneous capitalization omitted).

Appellant was subsequently charged with unlawful possession of a controlled substance. On July 10, 2018, appellant proceeded to a juvenile adjudication hearing before the Honorable Amanda Cooperman, wherein he made an oral motion to suppress the physical evidence recovered from Officer Grant's search of his person. (Notes of testimony, 7/10/18 at 5.) Officer Grant was the only witness to testify at the hearing, and the juvenile court found his testimony credible. (**See** juvenile court opinion, 10/10/18 at 1.) Following the hearing, the juvenile court denied appellant's suppression motion and adjudicated him delinquent of unlawful possession of a controlled substance. (Notes of testimony, 10/10/18 at 36, 38-39.) That same day, the juvenile court placed appellant at the Glen Mills School for Boys. Appellant did not file a post-dispositional motion. This timely appeal followed on August 7, 2018.[3]

Appellant raises the following issue for our review:

Did not the [juvenile] court err in denying the motion to suppress physical evidence, insofar as appellant was arrested and searched without probable cause?

---

[3] Appellant and the juvenile court have complied with Pa.R.A.P. 1925.

Appellant's brief at 3.[4]

Our standard of review when addressing a challenge to a court's denial of a suppression motion is well settled.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), *appeal denied*, 135 A.3d 584 (Pa. 2016).

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Bostick*, 958 A.2d 543, 550 (Pa.Super. 2008), *appeal denied*, 987 A.2d 158 (Pa. 2009) (citation and internal quotation marks omitted). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to

---

[4] We note that appellant's argument is two-fold and each of his claims will be addressed accordingly.

justify their interactions with citizens to the extent those interactions compromise individual liberty." ***Commonwealth v. Reppert***, 814 A.2d 1196, 1201 (Pa.Super. 2002) (citation omitted).  Courts in this Commonwealth have recognized three types of interactions between members of the public and the police:  a mere encounter, an investigative detention, and a custodial detention.

> The first of these interactions is a mere encounter (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond.  The second, an investigative detention must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest.  Finally, an arrest or custodial detention must be supported by probable cause.

***Commonwealth v. Ayala***, 791 A.2d 1202, 1208 (Pa.Super. 2002) (citations, brackets, and internal quotation marks omitted).

In the seminal case of ***Terry v. Ohio***, 392 U.S. 1 (1968), the United States Supreme Court indicated that police may stop and frisk a person where they have a reasonable suspicion that criminal activity is afoot and that the suspect may be armed and dangerous.  ***Id.*** at 27.  A panel of this court has explained:

> If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons.  In order to justify a frisk under [***Terry***] the officer must be able

> to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. Such a frisk, permitted without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.

***Commonwealth v. Preacher***, 827 A.3d 1235, 1239 (Pa.Super. 2003)

(internal quotation marks and citation omitted).

### I.    Scope of the *Terry* frisk

Here, appellant concedes that Officer Grant's ***Terry*** frisk was supported by reasonable suspicion,[5] but contends that the juvenile court erred in denying his suppression motion because Officer Grant exceeded the scope of a permissible search by reaching into appellant's left pants pocket.  (Appellant's brief at 7-9.)  In support of this contention, appellant avers that Officer Grant's "fishing expedition into [his pocket] was impermissible" where the incriminating nature of "[t]he hard object that Officer Grant felt" was not "immediately apparent." (***Id.*** at 10).  We disagree.

The record establishes that Officer Grant and his partner were on patrol in a high-crime area in the early morning hours of June 19, 2018, when they became involved in a high-speed chase with two vehicles; appellant was a passenger in one of these vehicles.  (Notes of testimony, 7/10/18 at 8-11,

---

[5] ***See*** notes of testimony, 7/10/18 at 28-29 (stating, "I will concede the frisk . . . I think this was prudent work.  And I think what the officer was trying to do was make sure that everything was safe during the entirety of this stop.").

14.)  Officer Grant testified that during the ensuing traffic stop, he became concerned that appellant may be in possession of a weapon after observing him "turn[] his left shoulder away from [the officers]" and "start to reach into his pockets." (*Id.* at 13-14.)  Officer Grant testified that he ordered appellant to step out of the vehicle and conducted an "open-hand pat down" frisk after appellant repeatedly disregarded Officer Grant's instruction to remove his hands from his pockets.  (*Id.* at 15-16.)  Officer Grant noted that during the course of this safety frisk, he felt a "large" and "hard" object in appellant's front left pants pocket.  (*Id.* at 17.)  Officer Grant opined that although he did not immediately recognize what the object was during the pat-down, he was concerned, based upon his training and experience as a police officer and the recent spate of violent incidents in this area, that the object was a weapon or firearm.  (*Id.* at 17-19, 26.)  On cross-examination, Officer Grant testified that he could not recall the exact size of the object he felt but that it was comparable to the size of a bottle of Nyquil.  (*Id.* at 21.)  Fearing for his safety, Officer Grant reached into appellant's pocket and removed the object, which turned out to be a large glass bottle labelled "Promethazine" that was prescribed to an individual with a different name than the one appellant had provided.  (*Id.* at 18.)  During a subsequent search of appellant's person incident to arrest, Officer Grant recovered a second, smaller pill bottle from appellant's right pants-pocket that contained two Oxycodone pills.  (*Id.* at 18-20.)

Based on the foregoing, we conclude that Officer Grant articulated a reasonable belief that what he felt in appellant's pocket was a weapon. Accordingly, we discern no error on the part of the juvenile court in concluding that Officer Grant did not exceed the scope of a permissible search by reaching into appellant's left pants pocket during an otherwise valid *Terry* pat-down. *See*, *e.g.*, *Commonwealth v. Taylor*, 771 A.2d 1261, 1269 (Pa. 2001) (holding that a police officer was justified in reaching into a defendant's pocket during course of *Terry* frisk, where the defendant reached for his pocket despite being told not to move several times, and the officer felt a hard, cylinder-type object in the pocket, which he reasonably believed to be a weapon), *cert. denied*, 534 U.S. 994 (2001); *but see Commonwealth v. Wilson*, 927 A.2d 279, 285-286 (Pa.Super. 2007) (concluding that an officer's search and seizure of drugs in defendant's coat pocket exceeded lawful scope of *Terry*, where the officer's testimony that he felt a "hard, large ball" failed to articulate any reasonable belief that the object he felt in defendant's pocket appeared to be a weapon.).

In reaching this conclusion, we note that, contrary to appellant's contention, analysis of whether Officer Grant justifiably put his hand into appellant's pocket under the "plain feel doctrine" is not warranted in this case. (*See* appellant's brief at 9-11). Under the plain feel doctrine,

> a police officer may seize **non-threatening contraband** detected through the officer's sense of touch during a *Terry* frisk if the officer is lawfully in a position to detect the presence of contraband, the

> incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object.

***Commonwealth v. Stevenson***, 744 A.2d 1261, 1265 (Pa. 2000) (emphasis added), citing ***Minnesota v. Dickerson***, 508 U.S. 366, 375 (1993).

Here, Officer Grant reached into appellant's left pants pocket under the reasonable belief that the large and hard object that he felt in appellant's left pants pocket was "a weapon . . . [or] a firearm." (Notes of testimony, 7/10/18 at 26.) As the juvenile court recognized in its opinion:

> It was reasonable for Officer Grant to go into [appellant's] pockets to dispel a reasonable fear for his safety and the safety of others during the investigatory stop. [Appellant] was a passenger in a vehicle that was just in a high[-]speed chase with police at 4:15 in the morning in a high[-]crime area where Officer Grant has a plethora of personal experience with weapons recovered from traffic stops. Moreover, the officers made the stop without the benefit of a police vehicle. [Appellant] did not comply with Officer Grant's order to stop hiding his body and reaching into his pockets. It was only after a limited [] search of the outside of [appellant's] clothes and feeling a hard object that was not readily identifiable that Officer Grant expanded his search to the inside of that particular pocket. Looking at the totality of the circumstances, Officer Grant had a reasonable suspicion, based on specific and articulable facts, that [appellant] may be armed and dangerous, and Officer Grant tailored his search to only that which was reasonably necessary for the discovery of weapons.

Juvenile court opinion, 10/10/18 at 4-5 (citations to notes of testimony omitted).

Accordingly, appellant's first claim must fail.

## II.   Probable cause to arrest

In his second claim, appellant contends that the juvenile court erred in denying his suppression motion because Officer Grant lacked probable cause to arrest him given that it is not a crime to possess a bottle of Promethazine, even if it is prescribed to another individual.  (Appellant's brief at 11-12.)

As recognized by the juvenile court and both parties, although the common mixture of Promethazine and Codeine is a controlled substance, Promethazine, by itself, is not.  (Juvenile court opinion, 10/10/18 at 3 n.1; appellant's brief at 11; and Commonwealth's brief at 13.)   During the suppression hearing, Officer Grant mistakenly testified to his belief that Promethazine is a controlled substance and neither party objected to this testimony.  (**See** notes of testimony, 7/10/18 at 19.)  Moreover, the record reflects that appellant failed to make any argument during his oral suppression motion that the police lacked probable cause to arrest him because Promethazine is not a controlled substance.  On the contrary, our review of the suppression hearing transcript reveals that appellant based his suppression motion solely upon Officer Grant's initial **Terry** frisk and the subsequent search of his pocket, and not upon the officer's purported lack of probable cause to arrest.  (**Id.** at 5-6, 29-33.)  As such, the Commonwealth was not afforded the opportunity to present any evidence on this issue, nor elicit specific testimony from Officer Grant with regard to his training and

experience with respect to Promethazine or how it is commonly mixed with Codeine on the street.  **See**, **e.g.**, **United States v. Achobe**, 560 F.3d 259, 261 (5th Cir. 2008) (stating that a mixture of Promethazine and Codeine is a "major street drug" commonly referred to as "purple" or "syrup"). Accordingly, because appellant did not raise in the juvenile court the theory of relief he now argues on appeal, his claim is waived for purposes of our review.  **See** Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Dispositional order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/4/20